# WINSTON & STRAWN LLP

NORTH AMERICA   SOUTH AMERICA   EUROPE

1901 L Street, N.W.
Washington, D.C. 20036-3506
+1 202-282-5000
+1 202-282-5100

MICHAEL B. KIMBERLY
PARTNER

5/21/2026

**VIA ELECTRONIC CASE FILING**

Clifton Cislak, Clerk
U.S. Court of Appeals for the D.C. Circuit

Re:    *Advanced Medical Technology Association v. Library of Congress*, No. 25-5328

Dear Mr. Cislak,

I submit this letter to correct two statements that I made at oral argument, which the Court held in this case on May 15, 2026.

First, at minute 49:43–50:37 of the oral argument, I cited JA868 for the proposition the Register of Copyrights concluded that there had been no pertinent change to the fair-use doctrine between 1994, when *Campbell v. Acuff-Rose Music* was decided, and 2023, when *Andy Warhol Foundation v. Goldsmith* was decided. The correct citation is JA812.

Second, at minute 56:09–56:20, I stated that the record did not contain evidence indicating whether AdvaMed's and MITA's members use technological protective measures to restrict access to diagnostic, service, and maintenance software and related works, separate from the operating system and operating software. That was incorrect.

Philips North America submitted the declaration of Jacqueline Dickson in the Eighth Rulemaking. It is reproduced at JA1425-27. Ms. Dickson testified that Philips uses a three-stage encryption strategy: It provides upon request keys for "Level 0" materials, which include "materials and service tools that Philips makes available to comply with regulatory requirements (such as 21 CFR 102030), as well as other documentation and software for performing basic maintenance and servicing," which includes operating software. It provides separate access keys to "Level 1" and "Level 2" materials, which include "service software, service documentation, training materials, and other proprietary materials." JA1425. Level 1 access is provided to licensees by separate written agreement and requires user training. JA1426. Level 2 access is generally reserved for Philips employees. *Id*. Ms. Dickson testified further that "[w]hen started, Philips medical imaging systems load software for clinical use of the system," which is separate from "field service software and information." JA1426-27. To access the latter category of software, a user must furnish a smart card with security credentials; "[t]he imaging system will then provide the user with access to software and information according to his or her entitlements." JA1427.



     This evidence is responsive to the Court's questions whether diagnostic and service software should be considered a single "mass" or "mix" of software with the system and operating software (it should not) and whether these distinctions in the different kinds of software were raised in the rulemaking (they were).

                               Respectfully,

                               Michael B. Kimberly

cc: counsel of record